BERNICE BOUIE DONALD, Circuit Judge,
dissenting.
The majority answered the wrong question. The case-dispositive inquiry is not whether PSR objection letters are generally exempt from disclosure under the first amendment or the common law. Instead, we should review the specific objection letters at issue here for their content and ask two threshold questions. First, could we grant access to these particular letters without implicating the reasons we keep PSRs private? Second, are the letters really more like a document to which the first amendment attaches? See, e.g., In re Hearst Newspapers, 641 F.3d 168, 176 (5th Cir. 2011). Because the answer to both questions is yes, I respectfully dissent.
As a general rule, the public has a first amendment right of access to court documents and proceedings. See, e.g., Press-Enter. Co. v. Superior Court of California, 464 U.S. 501, 505-508, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984); Globe Newspaper Co. v. Superior Court for Norfolk Cnty., 457 U.S. 596, 604-605, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982); United States v. Alcantara, 396 F.3d 189, 196 (2d Cir. 2005). There are only narrow exceptions, one of which is for PSRs. Huckaby, 43 F.3d at 138. To ensure that public access to court documents and proceedings remains the rule, courts should carefully scrutinize attempts to invoke exceptions, and not simply defer to the labels used in a particular case.
With that in mind, I turn my attention to the specific objection letters in this case. As the majority notes, the plaintiffs want to use three sentences from the objection letters, (op. 780). Two of those sentences describe the government’s view that Scotts’ bird food caused actual bird deaths. Id. The other sentence is one where Scotts acknowledges the government’s view, but argues that its bird food caused no deaths. Id.
None of this implicates the three policy considerations the majority cited for exempting PSRs from disclosure. The first is a desire to protect the defendant’s privacy interest in sensitive personal information. Huckaby, 43 F.3d at 138 (As the fifth circuit explained, a PSR “routinely describes the defendant’s health, family ties, education, financial status, mental and emotional condition, prior criminal history and uncharged crimes.”). The majority does not argue that the letters contain such information. The closest it comes to arguing that withholding the letters would protect privacy is when it asserts that the information included in the letters is hearsay. (op. 782-83). But the mere fact that the information would be hearsay — if true — is not enough to show that releasing it would hinder privacy.
The second reason courts exempt PSRs is to avoid impeding the free flow of information to the probation office. If a PSR might one day become public, the logic goes, then people might be less willing to contribute relevant information. Huckaby, 43 F.3d at 138. The question we should ask to determine if this is a legitimate worry here is whether the government or Scotts would have been deterred from sharing *783 the information included in their objection letters if they knew it could eventually be public. See Corbitt, 879 F.2d at 233. The majority nowhere suggests that this is the case. Indeed, knowing that the letters might one day be disclosed would arguably have made Scotts more likely to write an objection letter. If the letter became public, it could show that it had steadfastly maintained that its products had done no harm during the criminal proceedings.
Third, courts exempt PSRs to protect confidential informants and information. Id. The majority admits this is not a concern with respect to these specific objection letters, (op. 777-78).
Of course, just because these letters do not implicate the policy rationales for refusing to attach the first amendment to PSRs, it does not necessarily follow that the first amendment would attach to these letters. I therefore consider whether these letters are actually more like sentencing memoranda, which the majority implicitly concedes, are covered by the first amendment. (op. 773). A quintessential function of a sentencing memorandum is to set forth a party’s view of how much harm criminal conduct caused in hopes of convincing a court to impose a more or less lenient sentence. Take Leonard Moore’s publicly available sentencing memorandum in a case the sixth circuit ultimately considered. Just as Scotts argued that the government wrongly attributed bird deaths to its product, Moore argued that the government wrongly attributed the theft of all motorcycles stolen during “Bike Week” to his criminal activity in the PSR. Both no doubt wanted a sentence that reflected their view of how much harm the conduct in question actually caused.
Importantly, the first amendment applies to sentencing proceedings and related documents because “openness in the sentencing context allows the public to observe whether the defendant is being justly sentenced, especially where the court, rather than a jury, is determining the sentence.” In re Hearst Newspapers, 641 F.3d at 179. That is especially true here for two reasons. First, the question of whether Scotts’ products caused bird deaths bears directly on the sentence’s fairness, i.e., whether the punishment fit the crime. See id. Additionally, this case has broad public interest because of the impact of the defendants’ conduct on the environment. Second, because this case involved a plea bargain and did not involve factual development at trial, the objection letters are the only way the public can assess the government’s and Scotts’ evidence. I would note parenthetically that at least 90% of cases today are resolved through a plea bargain. Lindsey Devers, Plea and Charge Bargaining: Research Summary, (Jan. 24, 2011), https://www.bja.gov/ Publications/Plea BargainingResear-chSummary.pdf. That means categorically withholding PSR objection letters, even when they readily resemble sentencing memoranda, could prevent the public from scrutinizing the fairness of a sentence in the overwhelming majority of cases.
Today’s ruling sets a troubling precedent. What savvy corporation seeking to avoid publicity of its criminal misdeeds will not channel all of its sentencing advocacy into the PSR process after reading this decision? The only way to prevent such defendants from nullifying the first amendment in the sentencing context is to look beyond the labels those defendants attach to their advocacy and consider whether the substance of what they submit really implicates the reasons we keep PSRs private, and whether it is more akin to the sort of documents the first amendment protects. Because the majority neglected this critical analysis, I must respectfully dissent.